IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CURTIS STERLING MURDOCK, III,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF GREENSBORO, NC, *et al.*,<br><br>Defendants. | 1:25-cv-909 |

**MEMORANDUM OPINION AND ORDER**

Lindsey A. Freeman, United States District Judge.

Plaintiff Curtis Sterling Murdock, III, brings this 42 U.S.C. § 1983 action against the City of Greensboro; the Greensboro Police Department; former Greensboro Police Chief Brian James; former Greensboro Police Chief John Thompson;[1] and Greensboro Police Officers R.G. Poole, K.M. Serrano Valentin, and K.W. Proffitt ("City Defendants") and Guilford County, NC; Guilford County Sheriff's Office; and Guilford County Detention Center ("County Defendants").[2] Mr. Murdock asserts various Fourth and Fourteenth

[1] The amended complaint refers to "Current Greensboro Police Department Chief John Thompson," Dkt. 4 at 1-2, but he has since retired. *See* https://www.greensboro-nc.gov/Home/Components/News/News/22044/.

[2] This opinion uses the following abbreviations for individual Defendants: City of Greensboro, NC ("City"); Greensboro Police Department ("GPD"); Guilford County, NC ("County"); Guilford County Sheriff's Office ("GCSO"); and Guilford County Detention Center ("GCDC").

The amended complaint, Dkt. 4, also named Defendant Sheriff Danny H. Rogers. Mr. Murdock later struck Sheriff Rogers from the amended complaint. *See* Dkt. 52-1, at 3

Amendment claims via Section 1983 for false arrest, false imprisonment, fabrication-of-evidence, wrongful incarceration, malicious prosecution, malicious prosecution conspiracy, violations of due process, and conspiracy to violate due process.

Before the Court are both the City Defendants', Dkt. 33, and the County Defendants', Dkt. 40, motions to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[3] Because all of Mr. Murdock's claims are either

---

(crossing out Sheriff Rogers' name in amended complaint). The Court therefore considers Sheriff Rogers no longer part of this action. *See* Text Order, 4/29/2026.

[3] The County Defendants move for dismissal of Mr. Murdock's claims against GCDC and GCSO under Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(4), (b)(5), and (b)(6). Dkts. 40 at 3-4, 41 at 5-7. GCDC specifically objects under 12(b)(4)-(5) because Mr. Murdock addressed the summons to GCDC rather than Sheriff Rogers or one of his employees. *See* Dkts. 5 at 7, 41 at 4-5; *see also id.* at 7 (objecting to service of Sheriff Rogers himself). The Court declines to address the 12(b)(4)-(5) arguments because Sheriff Rogers was dismissed from this action, *see supra* note 2, and GCDC is not a suable entity so could never be properly served. Moreover, the Rule 12(b)(1)-(2) arguments are completely undeveloped, and the Court sees no jurisdictional issue. If the County Defendants are arguing that GCDC's status as a non-person under Section 1983 raises a jurisdictional issue, they are mistaken. That question of statutory interpretation is properly addressed under Rule 12(b)(6). *See Paeste v. Gov't of Guam*, 798 F.3d 1228, 1234 (9th Cir. 2015) (finding at least four circuits hold "that whether a party is a 'person' under § 1983 is not a jurisdictional question but rather a statutory one" (citation modified)); *see also, e.g.*, *Agbara v. Prince George's Cnty. Pub. Schs.*, No. 20-0306, 2020 WL 7425298, at *6 (D. Md. Dec. 18, 2020), *aff'd*, No. 21-1029, 2022 WL 683362 (4th Cir. Mar. 8, 2022) (granting Rule 12(b)(6) motion because defendant was not a Section 1983 "person"). *But see Andrews v. Daw*, 201 F.3d 521, 525 n.2 (4th Cir. 2000) (admitting circuit inconsistency on whether Eleventh Amendment defense (not present here) falls under Rule 12(b)(1) or 12(b)(6)); *Johnson v. South Carolina*, No. 2:25-cv-03840, 2025 WL 2795319, at *2 (D.S.C. July 31, 2025), *adopted*, 2025 WL 2795496 (D.S.C. Sept. 2, 2025) (noting continuing circuit uncertainty). In any case, the legal standard under Rule 12(b)(1)-(2) and Rule 12(b)(6) is identical. *See Gulledge v. Cabarrus Cnty. Bd. of Educ.*, No. 1:24-cv-916, 2025 WL 1332311, at *2 (M.D.N.C. May 7, 2025); *Sneha Media &*

duplicative, defectively pleaded, or time-barred, the Court (1) GRANTS the County Defendants' motion, Dkt. 40, and (2) GRANTS the City Defendants' motion, Dkt. 33.

## FACTS AND PROCEDURAL HISTORY

Mr. Murdock's claims largely stem from two arrests—in 2020 and 2025—by officers of the Greensboro Police Department.

### I. 2020 Arrest and Prosecution

Mr. Murdock alleges that, on July 23, 2020, he was at the apartment of a man named Mr. Solomon when an altercation ensued. *See* Dkt. 4 (Amended Complaint) ¶ 27. Mr. Solomon shoved Mr. Murdock and chased him with a shop ax from the apartment down to the public street. *See id.* Mr. Murdock realized his phone was missing; when he asked Mr. Solomon to return it, Mr. Solomon swung the ax at Mr. Murdock. *Id.* Mr. Murdock dodged the attack and gained control of the ax. *See id.* Mr. Solomon threatened to kill Mr. Murdock and tried to wrestle the ax back. *See id.* Mr. Murdock held onto the ax, but Mr. Solomon was bruised in the scuffle. *See id.* Then an unnamed accomplice struck Mr. Murdock with a piece of wood. *See id.* ¶ 31.

At some time during this fight, a witness called GPD, and Defendant Officer Poole responded to the scene where Messrs. Solomon and Murdock told conflicting stories. *See*

*Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018) (finding 12(b)(2) motions must be evaluated in light most favorable to non-movant); *RPR & Assocs. v. O'Brien/Atkins Assocs., P.A.*, 921 F. Supp. 1457, 1460-61 (M.D.N.C. 1995) (finding same for 12(b)(1) motions), *aff'd*, 103 F.3d 120 (4th Cir. 1996) (unpublished table decision).

*id.* ¶¶ 28-29. Mr. Solomon told Officer Poole that Mr. Murdock robbed him of his wallet and cash and threw the items into a hole in the side of the house.[4] *See id.* ¶ 30. Mr. Murdock told Officer Poole that Mr. Solomon and an unnamed accomplice attacked him with the ax and piece of wood and stole his cell phone. *See id.* ¶¶ 31-32. Apparently believing Mr. Solomon, Officer Poole arrested Mr. Murdock and took him to Guilford County Detention Center.[5] *See id.* ¶ 33. Mr. Murdock was charged with armed robbery through the Guilford County Magistrate's Office and the magistrate set bond at $20,000. *See id.* ¶¶ 35, 38. After 57 days in the Guilford County Detention Center, Mr. Murdock paid a $2,000 bondsman fee and was released. *See id.* ¶ 39.

In late 2020 and early 2021, Mr. Solomon, his significant other, and a witness named Darrell Garrett signed affidavits, Dkts. 4-4, 4-5, 4-6, and recorded video statements, *see* Dkt. 7, stating Mr. Murdock is innocent. Dkt. 4 ¶ 40-42. The affidavits were submitted to the Guilford County District Attorney's Office in January 2021. *See id.*

---

[4] Mr. Murdock alleges "there were no holes in the side of the house" into which to throw any stolen belongings and that he had no stolen money or belongings on his person during his arrest. Dkt. 4 at 48, 63. He also alleges the ax was no longer nearby when he was arrested and that Officer Poole did not retrieve the ax "until several days later." *Id.* at 33-34.

[5] Mr. Murdock alleges that he was arrested by Officer Poole with no cash on him at his business investment property located at 1101 Alamance Church Rd., Greensboro NC. *See* Dkt. 4 ¶ 33. Mr. Murdock also alleges Officer Poole arrived on the scene where the altercation transpired and suggests that he was arrested at that location. *See id.* ¶¶ 29-34. It seems to the Court that the two properties are adjacent.

¶ 41. They were also given to Mr. Murdock's court-appointed attorney and to the Clerk of Court before trial. *See id.* ¶ 41-42. Despite these affidavits, the District Attorney's Office proceeded to trial. *See id.* ¶ 44. Mr. Murdock alleges that a charge for assault with a deadly weapon was added the day of trial because of collusion by the Defendants. *See id.* at 19. Ultimately, on October 7, 2022, a jury acquitted Mr. Murdock of the charges arising from the 2020 arrest. *See id.* ¶ 44.

## II. 2025 Arrest and Court-Ordered Mediation

Mr. Murdock alleges that on July 8, 2025, his younger sister, Ms. Cierra Murdock, called GPD and falsely reported to Defendant Officers K.W. Proffitt and K.M. Serrano Valentin that Mr. Murdock had pointed a gun at her. *See id.* ¶ 45. According to the amended complaint, Ms. Cierra Murdock made the false report in retaliation for a civil restraining order Mr. Murdock had taken out against her, and he had warned GPD earlier that day that she was contemplating such retaliation. *See id.* at 49.

The officers arrived at Mr. Murdock's business where they found him with a holstered antique pistol. *See id.* at 48 & ¶ 2. They held him at gunpoint and ordered him to turn around and drop to his knees. *Id.* at 49. Then they handcuffed him and detained him in a GPD vehicle. *See id.* ¶ 46. Throughout the incident, Mr. Murdock maintains that his antique pistol stayed holstered and he posed no threat. *See id.* ¶ 2. He told the officers that he had a recording of Ms. Cierra Murdock admitting she would file a fake police report, but he could not show it to them because his cell phone was overheated. *See id.* at

49-50 & ¶ 48. Days later, Ms. Cierra Murdock admitted to a court-ordered mediator that she fabricated the police report about the antique pistol incident, *id.* ¶ 49, and Mr. Murdock furnished GPD with a flash drive containing the video he says shows her threatening to falsely accuse him, *id.* at 49-50. The Officers did not update their police report with this new information. *See id.* at 50.

Mr. Murdock first filed this action on October 7, 2025. Dkt. 1. He filed an amended complaint, Dkt. 4, on October 9, 2025, with the following nine counts:

| | Count | Violation(s) Alleged | Defendants[6] |
|---|---|---|---|
| 2020 arrest, detention, and prosecution | I | Fourth Amendment (false arrest, false imprisonment, wrongful incarceration) | City, County, GPD, GCSO, GCDC, Chief James, and Officer Poole |
| | II | Fourth & Fourteenth Amendments (malicious prosecution, violation of due process) | City, County, GPD, GCSO, GCDC, Chief James, Chief Thompson, and Officer Poole |
| | III | Fourth Amendment (false arrest, false imprisonment, wrongful incarceration) | City, County, GPD, GCSO, GCDC, Chief James, Chief Thompson, Officer Poole |
| | IV | Fourth & Fourteenth Amendments (violation of due process, malicious prosecution) | City, County, GPD, GCSO, GCDC, Officer Poole, Chief James, Chief Thompson |
| | V | Fourth & Fourteenth Amendments (violation of due process, conspiracy to maliciously prosecute) | City, County, GPD, GCSO, GCDC, Officer Poole |
| 2025 arrest | VI | Fourth Amendment (false imprisonment, wrongful incarceration, false arrest, false detainment, excessive force) | City, County, GPD, Officer Proffitt, Officer Serrano Valentin |
| Both | VII | *Monell* Claim (violation of due process, malicious prosecution, conspiracy to maliciously prosecute) | City, County, GPD, GCSO, GCDC |
| 2025 | VIII | Fourth & Fourteenth Amendments (conspiracy to violate due process) | City, County, GPD, Officer Proffitt, Officer Serrano Valentin |
| 2020 | IX | Fourth & Fourteenth Amendments (violation of due process, conspiracy to maliciously prosecute) | City, County, GPD, GCSO, GCDC, Officer Poole |

The City and County Defendants moved to dismiss the amended complaint on December 4 and 8, 2025. Dkts. 33, 40. Mr. Murdock responded to both motions on

December 10, 2025. Dkts. 43-44. The City and County Defendants replied on December 15 and 23, 2025. Dkts. 46, 57. Both motions are now ready for the Court's consideration.

## STANDARDS OF REVIEW

"A motion to dismiss tests the sufficiency of a complaint." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must plead sufficient facts to demonstrate that the claims are plausible on their face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged their claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A court ruling on a motion to dismiss must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery County*, 684 F.3d 462, 468 (4th Cir. 2012). In doing so, the Court will also consider materials incorporated into the complaint by reference. Fed. R. Civ. P. 10(c); *see Occupy Columbia*, 738 F.3d at 116; *Riddick v. Barber*, 109 F.4th 639,

---

[6] For abbreviations, *see supra* note 2.

645 (4th Cir. 2024). In this case, that includes all exhibits, affidavits, declarations, and other evidentiary materials filed in connection with any version of the Plaintiff's complaint. *See* Text Order, 4/29/2026; *see also Zsigray v. Cnty. Comm'n of Lewis Cnty.*, 709 F. App'x 178, 179 (4th Cir. 2018) (per curiam) (unpublished) (holding that district courts may consider videos that are "integral to the complaint and authentic" when ruling on Rule 12(b)(6) motions), *followed by, e.g.*, *Street v. Santiago*, No. 1:21-cv-941, 2023 WL 2388761, at *2 (M.D.N.C. Mar. 7, 2023); *Sides v. Kimbrough*, No. 1:23-cv-502, 2024 WL 99490, at *7 (M.D.N.C. Jan. 9, 2024), *adopted*, 2024 WL 406659 (M.D.N.C. Feb. 2, 2024). But the Court "need not accept the legal conclusions drawn from the facts, and we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks omitted).

Courts must liberally construe *pro se* complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Because most *pro se* litigants are not attorneys, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id*. Accordingly, *pro se* complaints, especially those alleging civil-rights violations, deserve liberal construction. *Nichols v. Bumgarner*, 173 F.4th 511, 519 (4th Cir. 2026); *see also Gowen v. Winfield*, 130 F.4th 162, 171 (4th Cir. 2025) (mandating district courts grant even greater leniency to a *pro se* plaintiff's complaint when "an action implicates a civil rights interest"). But liberal construction is not limitless. *Jackson v. Dameron*, 171 F.4th 641, 649 (4th Cir. 2026); *Beaudett v. City of Hampton*,

775 F.2d 1274, 1278 (4th Cir. 1985) ("District judges are not mind readers. Even in the case of *pro se* litigants, they cannot be expected to construct full blown claims from sentence fragments."); *Potter v. District of Columbia*, 558 F.3d 542, 553 (D.C. Cir. 2009) (Williams, J., concurring) ("[J]udges 'are not like pigs, hunting for truffles buried in briefs' or the record.'" (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991))). The Court, therefore, should not assume the role of advocate for the *pro se* litigant. *Bumgarner*, 173 F.4th at 519.

**ANALYSIS**

The Court liberally construes Mr. Murdock's *pro se* complaint and addresses each Count in turn. As explained below, the Court finds that Mr. Murdock has failed to plead a single ground for relief. His claims are either duplicative, time-barred, insufficiently pleaded under Fed. R. Civ. P. 8(a)(2), or fail to state a claim upon which relief can be granted under Rule 12(b)(6). But before turning to the individual counts, the Court addresses threshold issues affecting multiple claims.

## I. Several Claims are Duplicative or Brought Against Defendants Who Cannot Be Held Liable Under Section 1983.

As explained below, claims against individual City Defendants in their official capacities are duplicative because Mr. Murdock brings *Monell* claims against the City of Greensboro in Count VII. Moreover, the Greensboro Police Department, the Guilford County Sheriff's Office, and the Guilford County Detention Center are not suable entities under Section 1983, so the claims against them must be dismissed. Finally, Mr. Murdock

has not alleged facts showing that former Greensboro Police Chief James or Thompson participated in the alleged constitutional violations or may otherwise be held liable in their individual capacities. The Court therefore dismisses the claims against those Defendants.

### A. The official-capacity claims against individual City Defendants are duplicative.

Because official-capacity claims "are essentially the same as a claim against the [entity]," they "should be dismissed as duplicative" when the entity is also named as a defendant. *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004). Mr. Murdock brings claims against "Individual City Defendants," namely: (1) former Greensboro Police Chief Brian James, (2) former Greensboro Police Chief John Thompson, (3) Officer R.G. Poole, (4) Officer K.M. Serano Valentin, and (5) Officer K.W. Proffitt, all in their individual and official capacities. But Mr. Murdock also names as a defendant the City of Greensboro—the entity all these defendants work for in their official capacities—and brings a *Monell* claim against it in Count VII. So, all claims against individual City Defendants in their official capacities are duplicative and therefore dismissed.

### B. The Greensboro Police Department, Guilford County Sheriff's Office, and Guilford County Detention Center are not "persons" suable under Section 1983.

Mr. Murdock inappropriately brings Section 1983 claims against the Greensboro Police Department in all nine counts and against the Guilford Count Sheriff's Office and

the Guilford County Detention Center in Counts I, II, III, IV, V, VII, and IX. Actions may be brought under 42 U.S.C. § 1983 against "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage" causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added). But a defendant that is not a "person" within the meaning of Section 1983 cannot be sued thereunder. *Brown v. Lewisburg City Ct.*, No. 1:08-cv-332, 2008 WL 2390745, at *3 (M.D.N.C. June 9, 2008).

The Greensboro Police Department, the Guilford County Sheriff's Office, and the Guilford County Detention Center are not "person[s]" within the meaning of Section 1983, so Mr. Murdock's claims against them fail. *See Mobley v. Greensboro City Police Dep't*, No. 1:17-cv-114, 2017 WL 3128106, at *2 (M.D.N.C. July 21, 2017) ("In North Carolina, GPD is not an independent legal entity separate from the City of Greensboro."); *Mobley v. Guilford Cnty. Sheriff's Off.*, No. 1:17-cv-115, 2017 WL 1409579, at *3 (M.D.N.C. Apr. 20, 2017) ("There is no North Carolina statute authorizing suit against a county's sheriff's department. . . . Therefore, the Guilford County Sheriff's Office . . . is not amenable to suit under § 1983.") (citation modified); *Byrd v. Guilford County*, No. 1:23-cv-872, 2024 WL 898669, at *3 (M.D.N.C. Mar. 1, 2024), *adopted*, 2024 WL 5704626 (M.D.N.C. Mar. 27, 2024) ("Section 1983 imposes liability only on 'persons' who violate a plaintiff's federally protected civil rights, but Guilford County Detention Center 'is a building and not a person.'").

The amended complaint fails to state a claim for relief against GPD, GCSO, and GCDC because they are not "persons" within the meaning of Section 1983, so all claims against these Defendants are dismissed.

### C. Former Police Chiefs James and Thompson are not liable in their individual capacities.

Mr. Murdock does not allege sufficient facts to plausibly raise a Section 1983 claim against former Police Chiefs Brian James and John Thompson in their individual capacities. "To establish individual liability under § 1983, a plaintiff must affirmatively show that the 'official charged acted personally in the deprivation of the plaintiff's rights.'" *Wright v. Hill*, 2004 WL 1618591, at *4 (M.D.N.C. 2004) (quoting *Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985)) (citation modified). At least in the Fourth Circuit, a Section 1983 defendant can be individually liable under either a personal-involvement liability theory or supervisory liability theory. *See id.* at *4-5; *see also Renzi v. Naphcare, Inc.*, No. 1:24-cv-211, 2025 WL 448007, at *11 (M.D.N.C. Feb. 10, 2025), *rejected on other grounds*, 2025 WL 4793284 (M.D.N.C. Sept. 24, 2025). But Mr. Murdock satisfies neither theory here.

#### *1. Personal-Involvement Liability*

To satisfy the personal-involvement theory, "the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights." *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (citation modified); *Wright v. Hill*,

No. 1:03-cv-109, 2004 WL 1618591, at *4 (M.D.N.C. July 16, 2004). But the amended complaint provides no factual allegations that former Chiefs James or Thompson played any direct role in Mr. Murdock's 2020 arrest or prosecution or 2025 arrest. *See generally* Dkt. 4. For example, the amended complaint does not allege they were on the scene of the arrests, were directly involved in the prosecution, or that they directed any officer to act unconstitutionally. The amended complaint thus fails to adequately plead former Chiefs James or Thompson "acted personally in the deprivation of the plaintiff's rights." *Williamson*, 912 F.3d at 171.

### 2. *Supervisory Liability*

Some debate surrounds the propriety of supervisory liability under Section 1983, but the amended complaint is deficient by any standard. The Fourth Circuit has long applied a three-factor test to establish supervisory liability under Section 1983, asking whether: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) the supervisor's inadequate response to that knowledge showed deliberate indifference to, or tacit authorization of, the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

But in *Ashcroft v. Iqbal*, the Supreme Court discredited supervisory liability when it said that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." 556 U.S. 662, 677 (2009). Although the Fourth Circuit continues to apply the three-factor test, *see Johnson v. Robinette*, 105 F.4th 99, 123 (4th Cir. 2024), it has acknowledged tension between that test and the *Iqbal* rule, *see Younger v. Crowder*, 79 F.4th 373, 384 n.16 (4th Cir. 2023) (citing *Shaw*, 13 F.3d at 799). The Fourth Circuit has therefore contemplated condensing the three-factor test into one "simpler question—and [] one more in line with the Supreme Court's statement [in *Iqbal*]—of whether [the supervisor] himself was *deliberately indifferent*." *Id.* (emphasis added). "Deliberate indifference is a multifaceted claim requiring significant risk, substantial harm, knowledge, and inaction." *Younger*, 79 F.4th at 385-86.

Nevertheless, under either the three-factor test or the deliberate-indifference test, Mr. Murdock's claims against former Chiefs James and Thompson fail because the amended complaint is void of facts showing their involvement in the arrests or prosecution. The amended complaint mentions Chief James just once, in Count VII:

> Former Police Chief Brian James gave training, policy, practices, customs and deliberate indifference to the Greensboro Police Department and to former Greensboro Police Officer Travis B. Cole and other Greensboro Police officers by not disciplining officers and or taking inaction when complaints was made during the plaintiff's prolonged proceedings when affidavits from the alleged victims stating that the plaintiff was innocent.

Dkt. 4 at 33.[7] This bare recitation of the elements for a supervisory liability claim alleges no details about Chief James' training, policies, or practices, nor does it provide any basis for this Court to conclude he had actual or constructive knowledge of the conduct of the relevant GPD officers—during Mr. Murdock's 2020 and 2025 arrests or in previous encounters with GPD—for supervisory liability to attach. The amended complaint fails to plead a supervisory liability claim against Chief James.

Similarly, the amended complaint mentions Chief Thompson just once, to include him as a defendant in the various Counts. No specific factual allegations show he, for example, had knowledge of unconstitutional conduct, tacitly authorized such conduct, or otherwise caused Mr. Murdock's rights to be violated. *See Shaw*, 13 F.3d at 799. Nor are there allegations that he failed to act despite knowledge of a significant risk of substantial harm to Mr. Murdock's rights. *Younger*, 79 F.4th at 385-86. The amended complaint fails to plead a supervisory liability claim against Chief Thompson.

Because Mr. Murdock failed to plead individual-capacity claims against Chief James or Chief Thompson under either a personal-involvement or supervisory liability theory, all individual-capacity claims against them are dismissed.

---

[7] The Court notes that Officer Travis B. Cole is not a defendant in this action.

## II. No Count Includes a Properly Pleaded Claim.

After reviewing the amended complaint, the Court finds that Mr. Murdock has failed to plead a single ground for relief. Specifically, the claims in Counts I, IV, and IX are duplicative of claims in other Counts; the claims in Count III are time-barred and fail to state a claim under Rule 12(b)(6); and all other claims are either insufficiently pleaded under Rule 8(a)(2) or fail to state a claim under Rule 12(b)(6). The Court addresses each Count in turn.

### A. Counts I and III are duplicative.

The claims in Count I are identical to the claims in Count III but are brought against fewer Defendants.[8] In both Counts, Mr. Murdock alleges false arrest and false imprisonment claims under the Fourth and Fourteenth Amendments related to his 2020 arrest and pretrial detention. *See* Dkt. 4 at 16, 21. Accordingly, all claims in Count I are dismissed as duplicative. *Pizarro Orta v. Creekstone Landscaping & Excavating, LLC*, No. 23-1954, 2024 WL 3555093, at *4 (D. Md. July 25, 2024) ("Where courts identify duplicative claims, one of the duplicative claims should be dismissed for reasons of judicial economy.").

---

[8] Count I brings claims against City, County, GPD, GCSO, GCDC, Chief James, and Officer Poole. Dkt. 4 at 16. Count III brings the same claims against the same Defendants as well as Chief Thompson. *Id.* at 21-22.

### B. Count II fails to plead a malicious prosecution or fabrication-of-evidence claim.

In Count II, Mr. Murdock brings claims for malicious prosecution and violations of his due process rights under the Fourth and Fourteenth Amendments for his 2020 arrest, pretrial detention, and prosecution. Dkt. 4 at 17. The Court finds that Mr. Murdock's malicious prosecution claim fails under Rule 12(b)(6) because his 2020 pretrial detention was supported by probable cause that he assaulted and robbed Mr. Solomon. And it finds the fabrication-of-evidence claim fails under Federal Rule of Civil Procedure 8(a)(2) because his conclusory allegations that Defendants induced a witness to lie fail to meet the required plausibility pleading standard and thus should be dismissed.

#### 1. *Mr. Murdock fails to plead a malicious prosecution claim because his 2020 pretrial detention was supported by probable cause.*

Although Mr. Murdock does not specify which Count II claim he brings under which constitutional Amendment, the Court interprets his Count II malicious prosecution claim as brought under the Fourth Amendment, not the Fourteenth Amendment. A malicious prosecution claim brought under Section 1983 "is properly understood as a Fourth Amendment claim for unreasonable seizure." *See Hupp v. Cook*, 931 F.3d 307, 323-24 (4th Cir. 2019); *see also Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 184 (4th Cir. 1996) (evaluating the merits of a Section 1983 malicious prosecution claim for pretrial seizure in violation of the Fourth Amendment). The Supreme Court has rejected the notion that unlawful pretrial detention claims can be brought as Fourteenth

Amendment due process claims, so such claims must be brought under the Fourth Amendment. *See Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."); *id.* at 369 n.8 ("[O]nce a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment."); *see also Albright v. Oliver*, 510 U.S. 266, 274 (1994).

Here, Mr. Murdock alleges Defendants lacked probable cause for his July 23, 2020, arrest that led to a 57-day *pretrial* detention. *See* Dkt. 4 at 33-34, ¶ 33-39. He acknowledges that all charges from the 2020 arrest were dropped on October 7, 2022, following a jury verdict of not guilty. Dkt. 4 ¶ 44. Because his claim arises from pretrial detention, the Court rejects his attempt to raise it under the Fourteenth Amendment.

His claim fares no better under the Fourth Amendment. To bring a Section 1983 claim for malicious prosecution under the Fourth Amendment, Mr. Murdock must allege facts showing that [1] Defendants caused him to be seized [2] pursuant to legal process unsupported by probable cause, and that [3] the criminal proceedings were terminated in his favor. *Harris v. Virginia*, No. 22-2051, 2023 WL 3144551, at *1 (4th Cir. Apr. 28, 2023); *see also Hupp*, 931 F.3d at 324. Determining whether probable cause existed at the time of Mr. Murdock's arrest is a fact-intensive inquiry. *See Taylor v. Waters*, 81 F.3d 429, 434

(4th Cir. 1996) ("In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest.").

The Court has reviewed the amended complaint and the exhibits and finds that Mr. Murdock's allegations show that his arrest was supported by probable cause, rendering the arrest and subsequent prosecution reasonable. The amended complaint alleges Mr. Murdock was arrested on July 23, 2020,[9] detained for 57 days, prosecuted, and acquitted on October 7, 2022.[10] Dkt. 4 at 12-14. Mr. Murdock alleges Officer Poole lacked probable cause to arrest and prosecute him. Dkt. 4 at 33-34. The Court disagrees. First, a Guilford County magistrate found probable cause for Mr. Murdock's 2020 arrest. *See* Dkt. 4 ¶¶ 34-39; Dkt. 34 at 6-7. The Fourth Circuit has made clear that a magistrate's finding of probable cause "weighs heavily toward a finding that" the seizure was lawful.[11]

---

[9] The amended complaint alleges the date is July 23, 2025, but the filings indicate this was a scrivener's error for July 23, 2020. *See* Dkt. 4-2 (2022 judgment bearing 2020 case number); Dkt. 4 at 33-34 (referencing "23 July 2020" arrest involving Officer Poole, Mr. Solomon, and the shop ax).

[10] This claim is not time-barred because a malicious prosecution claim accrues when the prosecution has terminated in the plaintiff's favor. *See Heck v. Humphrey*, 512 U.S. 477, 489 (1994). The relevant statute of limitations is three years. *See infra* Section II.C. Here, Mr. Murdock was acquitted on October 7, 2022, so the October 7, 2025, filing of this action was timely.

[11] An officer is not entitled to qualified immunity if he or she (1) deprived an individual of a constitutional right, and (2) that right was clearly established at the time of the violation. *See Hupp*, 931 F.3d at 317. Although the defendants in *Hupp*, unlike Defendants here, raised a qualified immunity defense, the *Hupp* court's analysis of the magistrate's ruling is still instructive because it pertained to the first prong of the qualified immunity

*See Hupp*, 931 F.3d at 324 ("Where a police officer takes certain steps, such as first conferring with a prosecutor about moving forward with a criminal prosecution, and a magistrate judge later affirms the officer's determination that probable cause exists for the prosecution, those steps weigh in favor of a finding of qualified immunity."). The magistrate's finding strongly indicates the arrest was supported by probable cause.

But the magistrate's finding is not dispositive, as courts must still assess the reasonableness of the officer's actions. *See Hupp*, 931 F.3d at 324 (citing *Merchant v. Bauer*, 677 F.3d 656, 664 (4th Cir. 2012)). For example, a defendant can still be liable if he lied to the magistrate to secure a finding of probable cause, or where probable cause is "plainly lacking." *See id.*

Although Mr. Murdock alleges *Mr. Solomon* lied about their altercation, Mr. Murdock does not allege *Officer Poole* knew Mr. Solomon lied or that he himself lied to the magistrate. Mr. Murdock alleges Mr. Solomon lied to Officer Poole that Mr. Murdock robbed him of cash and belongings and hid them in a nearby hole. *See* Dkt. 4 ¶ 30. Mr. Murdock told Officer Poole that Mr. Solomon and an unnamed accomplice attacked him with an ax and piece of wood and stole his cell phone. *See id.* ¶¶ 31-32. Upon Mr. Solomon's alleged lie, Officer Poole arrested Mr. Murdock and brought him before a magistrate. Crucially, Mr. Murdock does not allege Officer Poole lied to convince the

inquiry—whether the plaintiff's malicious prosecution claim was supported by allegations showing the defendant-officer lacked probable cause.

magistrate to find probable cause. Because the magistrate's probable cause finding was not tainted by mistruth, the Court considers it strongly indicative that probable cause supported the 2020 arrest. *See Hupp*, 931 F.3d at 325 (finding the district court erred in giving weight to magistrate's probable cause finding in light of evidence showing that defendant-officer lied about his interaction with the plaintiff at the time of the arrest).

Moreover, even if the Court ignored the magistrate's findings entirely, the amended complaint's allegations independently show Officer Poole had probable cause to arrest Mr. Murdock. "Probable cause is not a high bar." *See Spivey v. Norris*, 731 F. App'x 171, 175 (4th Cir. 2018) (citing *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). To determine whether an arrest was supported by probable cause, courts ask whether the facts *known to the officer* could make a prudent officer believe the suspect's conduct meets the elements of a crime. *See Thurston v. Frye*, 99 F.4th 665, 674 (4th Cir. 2024) (emphasis added). According to the amended complaint, before Officer Poole arrived, Mr. Murdock and Mr. Solomon had a physical fight involving an ax. *See* Dkt. 4 ¶ 27. The ax belonged to Mr. Solomon who attacked Mr. Murdock with it, but Officer Poole did not see that happen. *See id.* Mr. Murdock ultimately wrestled the ax from Mr. Solomon. *See id.* ¶¶ 27-29. Officer Poole then arrived after a third-party witness called GPD. Upon a close reading of the amended complaint, Mr. Murdock was still holding the ax when Officer

Poole arrived.[12] Mr. Solomon then told Officer Poole that Mr. Murdock had robbed him. *Id.* ¶ 30.

Upon arriving at the scene, Officer Poole had probable cause to arrest Mr. Murdock for armed robbery or assault. Officer Poole responds to a 911 call describing two men fighting, *see* Dkt. 4 ¶ 28; he arrives and finds Mr. Murdock holding an ax, *see* Dkt. 4 ¶ 29 (describing how Mr. Murdock was explaining whose ax it was, which would have been necessary only if Mr. Murdock were possessing it); and Mr. Solomon—who was bruised, Dkt. 4 at ¶ 27—claims he was assaulted and robbed by Mr. Murdock, Dkt. 4 ¶ 30. Plainly, an officer in such circumstances could reasonably believe the ax-wielding man had committed armed robbery or assault.

Even assuming the ax was no longer on the scene (as Mr. Murdock inconsistently claims), Mr. Solomon's accusations suffice for probable cause. *See English v. Clarke*, 90 F.4th 636, 646 (4th Cir. 2024) ("A victim's reliable identification of his attacker almost always suffices to establish probable cause." (citation modified)). Nor did the lack of stolen items on Mr. Murdock's person during his arrest, Dkt. 4 ¶ 33, vitiate probable

[12] Under Count II, Mr. Murdock states that after he takes the ax from Mr. Solomon, he "does not allow Mr. Solomon to take his ax back." *See* Dkt. 4 ¶ 27. Mr. Murdock then states that upon Officer Poole's arrival, Mr. Murdock "makes a statement that the shop hatchet ax belongs to Mr. King," Dkt. 4 ¶ 29, indicating that an ax was present at the scene and in his possession. This is consistent with the later decision to file charges for robbery with a dangerous weapon. *See id.* at 19. So, although Mr. Murdock later alleges under Count VI that "there was no weapon at the time of the plaintiff's arrest," *see id.* at 33-34, his earlier statements contradict that allegation.

cause.[13] "An officer need not exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." *See Brown v. Lott*, No. 21-6928, 2022 WL 2093849, at *2 (4th Cir. June 10, 2022) (citation modified).

Moreover, the exculpatory evidence Mr. Murdock later proffered is irrelevant because it did not affect what Officer Poole knew at the time of the arrest. Mr. Murdock argues that the arrest and subsequent prosecution were unconstitutional because, in the months following the arrest, Mr. Solomon recanted his original statements, *see* Dkt. 4-4, and Mr. Solomon's significant other Angela Lyles and a witness named Darrell Garrett signed affidavits contesting Mr. Solomon's original story, *see* Dkt. 4 ¶ 40, Dkts. 4-5, 4-6.[14] The City Defendants correctly argue that these statements do not affect the probable cause analysis because that information was not known to Officer Poole at the time of the arrest. Dkt. 34 at 7. No degree of reasonable investigative diligence by Officer Poole

---

[13] Mr. Murdock claims Mr. Solomon's narrative—that Mr. Murdock robbed him and stashed his belongings in a hole in the building—was not credible because the building lacked holes. Dkt. 4 ¶ 34. The Court finds that Mr. Solomon's identification of his attacker was enough to establish probable cause for assault, even if probable cause for robbery was undermined by discrepancies in Mr. Solomon's story. *See also Brown v. Lott*, No. 21-6928, 2022 WL 2093849, at *2 (4th Cir. June 10, 2022) ("An officer need not exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." (citation modified)).

[14] Ms. Lyles makes contradictory statements in her affidavit, Dkt. 4-5, and video testimony, Dkt. 7, *Slanderous Solomon's spouse Angel R. Lyles (2 of 2)..MOV*. In the video testimony, Ms. Lyles claims that "all I know" is that Mr. Solomon attacked Mr. Murdock with the hatchet. *See id.* But her affidavit says that Mr. Solomon had taken Mr. Murdock's cell phone, and that Mr. Murdock did not take Mr. Solomon's wallet. *See* Dkt. 4-5.

could have uncovered this information at the time of the arrest. *See Brown*, No. 21-6928, 2022 WL 2093849, at *2 (finding "an officer need not exhaust every potentially exculpatory lead . . . before probable cause is established"). So, the affidavits are irrelevant to the probable cause inquiry.

Nor does Defendants' failure to stop Mr. Murdock's prosecution despite the new evidence create a malicious prosecution claim. The Fourth Circuit has affirmed that malicious prosecution claims are limited to the initial probable cause analysis and has held that the failure to stop a prosecution because of newly discovered information is not a basis for a Fourth Amendment claim. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 (4th Cir. 1996) (holding that plaintiffs allegations that the officer's failure to terminate criminal proceedings after it became clear the plaintiff was innocent was not a basis for a Fourth or Fourteenth Amendment claim); *see also Safar v. Tingle,* 859 F.3d 241, 248 (4th Cir. 2017) ("An officer's failure to act upon allegedly exculpatory evidence does not render the continuing pretrial seizure of a criminal suspect unreasonable under the Fourth Amendment.") (internal quotation marks omitted).[15]

Because Mr. Murdock's 2020 arrest, detention, and prosecution were supported by probable cause, the Court dismisses his Count II malicious prosecution claim.

---

[15] To the extent these claims are targeted against the individuals who received the affidavits—such as Mr. Murdock's court-appointed attorney, Thomas Korbin or District Attorney Jackson Barnes, *see, e.g.*, Dkt. 4 at 19-20; Dkt. 4-2—the Court does not address those claims because they are not defendants in this action.

### 2. *Mr. Murdock fails to plead a Fourteenth Amendment fabrication-of-evidence claim.*

Next, construing the amended complaint liberally, the Court interprets Mr. Murdock's due process claim as a Fourteenth Amendment fabrication-of-evidence claim. The amended complaint generally alleges that eight defendants[16] conspired to fabricate witness testimony in his 2020 prosecution, and that the allegedly fabricated evidence influenced the prosecution's decision to pursue assault-with-deadly-weapon and armed robbery charges against him:

> Guilford County and the defendants listed in this cause of action agreed to charge the plaintiff with assault with a deadly weapon on the day of the trial . . . . Instead of dismissing and or acquitting the plaintiff of the untrue and false robbery with a dangerous weapon charge that pended for multiple years Guilford County and the defendants listed in this cause of action maliciously sought to arrange to frame the plaintiff by directing the court appointed attorney and victim whom was lying and any other official to say that King Solomon had a piece of wood so that the plaintiff would not qualify for the self-defense doctrine . . . that would have been

---

[16] Count II names eight Defendants:

> [1] The City of Greensboro, North Carolina; [2] Guilford County, North Carolina; [3] The Greensboro Police Department of Greensboro, North Carolina; [4] The Guilford County Sheriff's office; [5] The Guilford County Detention Center; [6] Former Police Chief Brian James; [7] Current Greensboro Police Chief John Thompson[; and] [8] Greensboro Police officer R.G. Poole badge no. 146.

Dkt. 4 at 18. As discussed above, the claims against the County Defendants fail because they are not suable under Section 1983; the claims against the police chiefs fail for duplicating the claims against the City (official-capacity claims) and for lack of supervisory liability (individual-capacity claims). That leaves Officer Poole as the only remaining Count II Defendant capable of fabricating evidence (as the City and County are not natural persons).

> transparent had the defendants told the truth that the plaintiff was attacked with a shop ax by King Solomon while the plaintiff had no weapon . . . .

Dkt. 4 at 19-20.

The Fourth Circuit has affirmed that a plaintiff may bring a fabrication-of-evidence claim even if he is acquitted at trial, *Harris v. Town of S. Pines*, 110 F.4th 633, 647 (4th Cir. 2024) (agreeing with other circuits that "[t]here is no meaningful reason why due process protections precluding fabricated evidence should turn on whether or not one is convicted at trial"), and even if he was not detained pre-trial, *id.* at 646 ("Whether the defendant is detained pre-trial or not, he experiences a deprivation of liberty when criminal proceedings against him are initiated."). To bring such a claim, Mr. Murdock must show: "(1) that officers fabricated or omitted material evidence; (2) that he suffered a loss of liberty; and (3) that the loss of liberty was caused by the fabricated evidence." *See id.* at 645 n.6 (citing *Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014) ("Fabrication of evidence alone is insufficient to state a claim for a due process violation; a plaintiff must plead adequate facts to establish that the loss of liberty . . . resulted from the fabrication."). "Loss of liberty" is a broad concept in the fabrication-of-evidence context and extends beyond physical detention. Rather, "the alleged harm is that the entire panoply of rights afforded to criminal defendants was infected by the fabricated evidence, thus wrongfully depriving the defendant of [his] liberty." *Id.* at 646. For example, the initiation of charges can itself be a qualifying "loss of liberty." *See id.* ("[T]he alleged harm in a due process fabrication of evidence case is the 'wrongful initiation of

prosecution.'"); *id.* at 648 ("[T]he relevant harm for [appellant's] fabrication of evidence claim is the initiation of criminal proceedings against him (*i.e.*, his indictment), and not his detention.").

Per the Court's liberal interpretation of the amended complaint, Mr. Murdock alleges that eight defendants conspired to fabricate evidence in his 2020 trial by directing witnesses to lie that Mr. Solomon wielded a piece of wood rather than a deadly ax during their altercation. *See* Dkt. 4 at 19-20. If Mr. Solomon indeed wielded an ax in the fight against Mr. Murdock, then the case against Mr. Murdock would have been weaker because his alleged assault of Mr. Solomon might have been justified by self-defense. Thus, the alleged fabrication might support a fabrication-of-evidence claim because "the prosecutor's decision to pursue charges rather than to dismiss the complaint . . . may depend on the prosecutor's and magistrate's assessments of the strength of the case, *which in turn may be critically influenced by fabricated evidence*." *Harris*, 110 F.4th at 646 (emphasis in original). The allegedly fabricated evidence that Mr. Solomon was only wielding wood and not an ax therefore might have influenced the decision to initiate or maintain charges against Mr. Murdock, the initiation itself being a "loss of liberty."

But the Court ultimately rejects Mr. Murdock's fabrication-of-evidence claim as currently pleaded because his allegations do not meet the plausibility pleading standard of Federal Rule of Civil Procedure 8(a)(2). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

The purpose is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Hopkins v. California*, No. 2:20-cv-2084, 2021 WL 6135925, at *3 (E.D. Cal. Dec. 29, 2021) ("To satisfy Rule 8 and to state a claim under § 1983, a complaint must identify the specific acts of each named defendant who is alleged to have violated plaintiff's rights." (citing *Johnson v. Duffy*, 588 F.2d 740, 730 (9th Cir. 1978))). To that end, "[a] complaint 'must identify specific acts or conduct taken by each defendant to state a claim.'" *Shinaberry v. Town of Murfreesboro, N.C.*, No. 2:17-cv-7, 2018 WL 1801417, at *5 (E.D.N.C. Apr. 16, 2018) (unreported) (dismissing tort claim brought against "all defendants"—including a town, county, and a sheriff's office officer and employee—for failing to specify each defendant's role in the tort); *Rice v. Adams*, 172 F.4th 428, 432 (4th Cir. 2026) ("In the § 1983 context, [the plausibility pleading] standard demands that a plaintiff plead that *each* Government-official defendant, through the official's *own individual actions*, has violated the Constitution." (internal quotation marks omitted)). It is not enough to allege that several defendants acted collectively without stating any specific action a defendant took.

Here, Mr. Murdock alleges that "Guilford County and the defendants listed in this cause of action" fabricated witness testimony by "directing the court appointed attorney and victim . . . and any other official to say that King Solomon had a piece of wood" instead of an ax. Dkt. 4 at 19-20. But nowhere does Mr. Murdock "identify specific acts

or conduct taken by each defendant." *Shinaberry*, 2018 WL 1801417, at *5. The amended complaint, therefore, gives no Defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. To the extent Count II alleges a Fourteenth Amendment fabrication-of-evidence claim, it is insufficiently pleaded under Rule 8(a)(2) and must be dismissed under Rule 12(b)(6). *See Williams v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 1:22-cv-570, 2023 WL 2329698, at *2 (M.D.N.C. Mar. 2, 2023) (citing *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)).

**C. Count III's false arrest and false imprisonment claims are time-barred and meritless.**

Mr. Murdock's claims for false arrest and false imprisonment are properly brought under the Fourth Amendment, but they are time-barred regardless. Mr. Murdock brings Section 1983 claims for "false arrest, false imprisonment and/or wrongful incarceration" in connection with his 2020 arrest and prosecution. *See* Dkt. 4 at 21. The Fourth Circuit treats wrongful incarceration claims as false imprisonment claims. *See Bolick v. Anderson*, 169 F.4th 528, 535 n.1 (4th Cir. 2026) (affirming dismissal of plaintiff's "wrongful incarceration" claim under standard of *Heck v. Humphrey*, 512 U.S. 477 (1994), for false imprisonment claims). Accordingly, the Court treats Mr. Murdock's wrongful incarceration claim and false imprisonment claim as one and the same.

Mr. Murdock does not specify which claim—false arrest or false imprisonment—falls under which Amendment; in any case, the Court finds both appropriately fall under

the Fourth Amendment. The amended complaint hedges between the Fourth and Fourteenth Amendments: "Causes of Action: 4th amendment constitutional violations of false arrest and unlawful seizure . . . and/or wrongful incarceration . . . 4th and 14th amendment constitutional violations of due process of law." *See* Dkt. 4 at 21. Like pretrial seizures generally, "[c]laims for false arrest and false imprisonment under 42 U.S.C. § 1983 are properly analyzed under the Fourth Amendment." *McCallum v. Kannapolis Police Dep't*, No. 1:25-cv-171, 2025 WL 2782529, at *8 (M.D.N.C. June 27, 2025). Thus, to the extent Mr. Murdock brings Fourteenth Amendment claims for false arrest and false imprisonment, those claims are rejected.[17]

As Defendants argue in their briefs, Mr. Murdock's claims for false arrest and false imprisonment are time-barred. Dkt. 34 at 8; Dkt. 41 at 10-11. Section 1983 does not contain its own statute of limitations, so to determine the timely filing of a Section 1983 claim, courts borrow the "statute of limitations of the most analogous state-law cause of action." *Reid v. James Madison Univ.*, 90 F.4th 311, 318 (4th Cir. 2024). For Section 1983 claims, that cause of action is a personal injury suit. *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 388 (4th Cir. 2014). The Fourth Circuit has concluded that "§ 1983 claims

[17] Furthermore, the Court is unsure whether Mr. Murdock also tries to bring Fourteenth Amendment due process claims in Count III. *See* Dkt. 4 at 21 (claiming "4th and 14th amendment constitutional violations of due process of law"). To the extent he does, the Court dismisses those claims as duplicative of those in Count II. *See* Dkt. 4 at 17 (claiming "4th and 14th amendment– violations of: Due Process, Malicious Prosecution").

arising in North Carolina are limited by the three-year period for personal injury actions set forth in [N.C. Gen. Stat.] § 1-52(5)." *Tommy Davis Constr., Inc. v. Cape Fear Pub. Util. Auth.*, 807 F.3d 62, 67 (4th Cir. 2015) (internal quotation marks omitted).

Mr. Murdock's claims for false arrest and false imprisonment were filed over two years too late. The statute of limitations period for Section 1983 false arrest and false imprisonment claims begins to run when a plaintiff is "bound over by a magistrate or arraigned on charges." *See Nelson v. Rockingham County*, No. 1:23-cv-488, 2024 WL 691413, at *4 (M.D.N.C. Feb. 20, 2024), *adopted*, 2024 WL 1014189 (M.D.N.C. Mar. 8, 2024) (quoting *Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim."). Here, Mr. Murdock was arrested on July 23, 2020, and promptly appeared before a magistrate on armed robbery charges. *See* Dkt. 4 ¶¶ 33-39. So, the statute of limitations period elapsed on or around July 23, 2023. But he waited over two more years—until October 7, 2025—to bring this action. *See* Dkt. 1. Mr. Murdock's false arrest and false imprisonment claims stemming from his 2020 arrest, therefore, are time-barred.

Those claims also fail on the merits. To prevail on such claims, Mr. Murdock "must show that he was seized by [the defendant] without probable cause." *English*, 90 F.4th at 646. But for the reasons discussed under Count II, Officer Poole had probable cause to

arrest Mr. Murdock. Mr. Murdock's false arrest and false imprisonment claims would thus have failed even if they had been timely brought. Accordingly, all claims in Count III are dismissed.

**D. Counts IV and II are duplicative.**

Count IV appears identical to Count II, except that it inexplicably omits paragraphs 16 and 17 of the amended complaint (referencing Defendant Officers Serrano Valentin and Proffitt) and substitutes the case number in connection with Count II from "20CRS78555" to "22CRS28230." As far as the Court can tell, Count IV relates to the same 2020 arrest and prosecution as Count II. *Compare* Dkt. 4 at 22-23 (referencing "plaintiff's 57 days of false imprisonment . . . with conclusion . . . of the charges . . . at a Jury Trial held 7 October 2022 (case no. 22CRS28230)") (Count IV), *with id.* at 17 (referencing "plaintiff's 57 days of false imprisonment . . . with conclusion . . . of the charges . . . at a Jury Trial held 7 October 2022 (case no. 20CRS78555)") (Count II). Accordingly, all claims in Count IV are dismissed as duplicative. *Pizarro Orta*, 2024 WL 3555093, at *4.

**E. Count V does not plausibly allege a conspiracy to maliciously prosecute.**

Count V appears to assert a Section 1983 civil conspiracy claim based on malicious prosecution, and a due process claim, arising from Mr. Murdock's 2020 arrest and prosecution—the same arrest and prosecution referenced in Count II. Count V is brought against all the same Defendants as in Count II, except it omits Chiefs James and Thompson. And Count V alleges the same due process violations that were dismissed in

Count II, except this time as a conspiracy claim. As in Count II, the claim fails because Mr. Murdock's constitutional rights were not violated by a prosecution that was based on probable cause.

The Court interprets Count V's malicious prosecution conspiracy claims as brought under the Fourth, not Fourteenth, Amendment. To the extent this claim alleges a conspiracy to maliciously prosecute under the Fourteenth Amendment, it is rejected. In the Fourth Circuit, a Section 1983 claim based on malicious prosecution arises under the Fourth Amendment. *See Lambert v. Williams*, 223 F.3d 257, 261-62 (4th Cir. 2000) (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996)); *Thompson v. Clark*, 596 U.S. 36, 39 (2022). The Fourth Circuit has explained that "the Due Process Clause of the Fourteenth Amendment does not provide protection in this area" because "the Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant in order to detain him prior to trial." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 (4th Cir. 1996). Because this claim relates to a pretrial seizure—Mr. Murdock's 2020 arrest and 57-day pretrial detention—the Court rejects the Fourteenth Amendment due process claims in Count V.

Turning to the Fourth Amendment claim, Mr. Murdock fails to allege facts sufficient to bring a claim for conspiracy to maliciously prosecute. To plead a Section 1983 conspiracy, he must allege that Defendants: (1) acted in concert and (2) completed some overt act in furtherance of the conspiracy that (3) resulted in the deprivation of one

of his constitutional rights. *O.W. v. Carr*, 172 F.4th 337, 355 (4th Cir. 2026) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). In a conspiracy to maliciously prosecute, the constitutional right in the third prong is the Fourth Amendment right to be free from arrest and prosecution without probable cause. *See Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678, 698 (6th Cir. 2020); *Rhodes v. Smithers*, 939 F. Supp. 1256, 1270 (S.D.W. Va. 1995), *aff'd*, 91 F.3d 132 (4th Cir. 1996) ("There is a clearly established constitutional right to be free from arrest and prosecution without probable cause." (citing *Pritchett v. Alford*, 973 F.2d 307 (4th Cir. 1992)).

Here, Mr. Murdock arguably[18] alleges the first and second prongs—that Defendants acted together to direct his appointed attorney, a witness (Mr. Solomon), and "any other official" to lie about the 2020 incident with Mr. Solomon. Dkt. 4 at 28-29. But Mr. Murdock fails to plead the third prong because he has not alleged how the conspiracy deprived him of his right to be free from an arrest or prosecution without probable cause. That is because Mr. Murdock's arrest, detention, and prosecution *were* supported by probable cause, as discussed above. *See supra* Section II.B. Thus, to the extent Count V asserts a Fourth Amendment malicious prosecution conspiracy, it fails because Mr. Murdock has failed to plead—and evidently cannot plead—a deprivation of his Fourth

---

[18] Count V suffers from the same Rule 8(a)(2) plausibility pleading deficiencies as other Counts, so these prongs are not necessarily properly pleaded.

Amendment right to be free from arrest or prosecution without probable cause.[19] *See Hamstead v. Walker*, No. 3:18-cv-79, 2019 WL 12313458, at *5 (N.D.W. Va. May 30, 2019) ("Without an actionable malicious prosecution, a conspiracy to maliciously prosecute claim inevitably fails." (citation modified)). The Court therefore dismisses Count V's malicious prosecution conspiracy claim.

**F. Count VI does not plausibly allege a false arrest, false imprisonment, or excessive force claim.**

Mr. Murdock pleads insufficient facts to allege Fourth Amendment claims for "false imprisonment and/or wrongful incarceration, false arrest, false detainment, [or] excessive force" in connection with his 2025 arrest. Dkt. 4 at 30 (citation modified). He claims Defendants unreasonably seized him after Ms. Cierra Murdock accused him of assaulting her with his antique pistol. *See* Dkt. 4 ¶¶ 45-47; *see also* N.C. Gen. Stat. § 14-34 ("If any person shall point any gun or pistol at any person, either in fun or otherwise, whether such gun or pistol be loaded or not loaded, he shall be guilty of a Class A1 misdemeanor."). He urges that Defendant Officers Proffitt and Serrano Valentin should have promptly released him when he told them he had video proof that Ms. Cierra Murdock had lied, and that they should have amended their police report days later to

[19] The City Defendants seek dismissal of Mr. Murdock's claims with extensive argument to the standards for a 42 U.S.C. § 1985 claim. But Mr. Murdock plainly brings his conspiracy claims under Section 1983, not Section 1985, so their arguments are inapplicable.

include Ms. Cierra Murdock's mediator testimony admitting to the lie. *See* Dkt. 4 ¶¶ 48-50. He says his seizure, his arrest, and Defendants' failure to amend their police report violated his Fourth Amendment rights.

The Court disagrees. As explained below, Ms. Cierra Murdock's accusation gave Officers Proffitt and Serrano Valentin probable cause to seize and arrest Mr. Murdock, notwithstanding his video evidence. Thus, Mr. Murdock's false arrest and false imprisonment claims fail. The same probable cause also justified the officers' use of force, which was reasonable under the circumstances. So, Mr. Murdock's excessive force claim fails, too. All claims in Count VI are therefore dismissed.

#### 1. *The false arrest and false imprisonment claims fail because the officers had probable cause.*

The amended complaint fails to plead false arrest or false imprisonment because Mr. Murdock's 2025 arrest and detention were supported by probable cause.[20] To allege either claim under Section 1983, Mr. Murdock "must show that he was seized by [the defendant] without probable cause." *English*, 90 F.4th at 646. But "[p]robable cause is not a high bar." *See Spivey*, 731 F. App'x at 175 (citing *Wesby*, 583 U.S. at 57). As discussed under Count II, the relevant inquiry is "whether the facts *known to the officer* could make

[20] As the Court explained under Count III, the Fourth Circuit equates wrongful incarceration claims with false imprisonment claims. So, Mr. Murdock's wrongful incarceration claim is dismissed as duplicative. Moreover, the Court finds no support for a Section 1983 "false detainment" claim in the Fourth Circuit. This claim looks identical to the false arrest claim, so it is also dismissed.

a prudent officer believe that the suspect's conduct satisfies the elements" of a crime. *Thurston*, 99 F.4th at 674 (emphasis added).

Per the allegations in the amended complaint, the facts within Officer Proffitt's and Officer Serrano Valentin's knowledge were sufficient to establish probable cause. The amended complaint alleges that on July 8, 2025, Mr. Murdock warned GPD that Ms. Cierra Murdock "was thinking of a way to retaliate" against him for the restraining order. *See* Dkt. 4 at 49. Later that day, Ms. Cierra Murdock called GPD and told Officer Proffitt and Officer Valentin that Mr. Murdock pointed an antique pistol at her. *See* Dkt. 4 ¶ 45; *see also id.* at 49. Later, both officers confronted Mr. Murdock at his office where they found him with a holstered antique pistol, consistent with Ms. Cierra Murdock's accusation. *See id.* at 49-51 & ¶¶ 2, 46. The officers pointed their guns at him, ordered him to drop to his knees, handcuffed him, and sat him in the back of a police vehicle. *See id*. ¶ 46. During the arrest, Mr. Murdock was telling the officers he had video proof that Ms. Cierra Murdock had falsely accused him. *See id.* ¶ 48. But he could not immediately produce the video because his cell phone had overheated from the sun. *See id.* at 49-50. The amended complaint does not allege for how long Mr. Murdock was detained, but it appears he was promptly released, because just days later, he submitted a flash drive to

GPD with a video of Ms. Cierra Murdock allegedly stating that "[s]he was going to make up a crime to bring the whole City of Greensboro [P]olice [D]epartment."[21] Dkt. 4 at 50.

These allegations show Officers Proffitt and Serrano Valentin had probable cause to seize Mr. Murdock. Much like the shop ax incident with Mr. Solomon, the officers responded to a scene consistent with criminal activity, and they acted accordingly. The officers responded to Ms. Cierra Murdock's call claiming Mr. Murdock assaulted her with an antique pistol. And the identification of her assailant seemed reliable because Mr. Murdock indeed possessed an antique pistol. Ms. Cierra Murdock's call alone created probable cause to seize Mr. Murdock. *See English*, 90 F.4th at 646 ("A victim's reliable identification of his attacker almost always suffices to establish probable cause." (citation modified)); *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991) ("It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker. Indeed, it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself." (internal citation omitted)).

---

[21] The Court has reviewed the video. *See* Dkt. 45, *Cierra Murdock Premeditating Slander (Can be heard at Stop Sign).MP4*. The video is largely inaudible, and the Court did not hear Ms. Cierra Murdock say she would fabricate a crime and accuse Mr. Murdock.

Mr. Murdock submitted a second video that further corroborates the fact that he had an antique pistol with him during the arrest, indicating that Ms. Cierra Murdock's identification was reliable and probable cause existed. *See* Dkt. 45, *Cierra Murdock Carrying out Slander.MP4*, at [0:03:25]. In it, Mr. Murdock retrieves a F.lli Pietta box from his truck and shows it to the camera. (F.lli Pietta manufactures reproductions of collectable guns. *See* F.lli Pietta, https://pietta.it/en/ (last visited September 25, 2026).[22]) He then recounts the antique-pistol encounter with Ms. Cierra Murdock: "'Oh he's approaching me with a gun, oh he's approaching me with a gun," he says in a voice meant to mimic Ms. Cierra Murdock's. "It's in my holster. The antique pistol—it's not a 'gun,'" he replies in his own voice. *See id.* [0:03:30-0:03:40]. The box and Mr. Murdock's statements indicate he likely had an antique pistol with him when the police arrested him. The presence of the distinctive antique pistol, coupled with Ms. Cierra Murdock's accusation describing it, gave Officers Proffitt and Serrano Valentin probable cause to seize Mr. Murdock.

The amended complaint does not allege the officers had information during the arrest that would convince a prudent officer that Ms. Cierra Murdock was lying. *See generally* Dkt. 4*; see also* Dkt. 34 at 9. The officers lacked access to the video of Ms. Cierra

[22] "[A]t any stage of the proceeding" and "on its own," "[t]he court may judicially notice a fact that is not subject to reasonable dispute because [the fact] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Murdock until several days after the incident. *See* Dkt. 4 at 50. And Ms. Cierra Murdock's affidavit admitting to lying was not submitted for months. *See* Dkt. 26 at 2 (Ms. Cierra Murdock's affidavit dated October 27, 2025, over three months after the July 8, 2025, incident). For all they knew, Ms. Cierra Murdock's accusation was credible. Nor would that information have mattered had they known it, because an officer "need not exhaust every potentially exculpatory lead before probable cause is established." *See Brown*, 2022 WL 2093849, at *2 (citation modified).

In summary, Officers Proffitt and Serrano Valentin responded to a victim's report stating Mr. Murdock assaulted Ms. Cierra Murdock with an antique pistol, and all the facts available to them at the time corroborated that story. These circumstances gave the officers probable cause to seize Mr. Murdock. As a result, Mr. Murdock's claims for false arrest and false imprisonment against Officer Proffitt and Officer Serrano Valentin are dismissed.

#### 2. *The excessive force claim fails because the force used was reasonable under the circumstances.*

Mr. Murdock's claim for excessive force also fails because the officers used reasonable force under the circumstances. Mr. Murdock alleges that, after Ms. Cierra Murdock accused him of armed assault, Officers Proffitt and Serrano Valentin held him at gunpoint, ordered him to his knees, handcuffed him, and sat him in a police vehicle. Dkt. 4 at 49 & ¶ 46. He does not allege he suffered physical injury.

Courts review excessive force claims under the Fourth Amendment's reasonableness standard. *See Benton v. Layton*, 139 F.4th 281, 288 (4th Cir. 2025). To determine whether force was reasonable under the Fourth Amendment, courts must consider: (1) the severity of the crime that is the subject of the arrest; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect is "actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*.

Here, the force used by Officers Proffitt and Serrano Valentin was reasonable given the information then available to them. They knew Mr. Murdock was accused of assault with a firearm, a severe and dangerous crime. And per his own allegations, he was armed with a holstered pistol, Dkt. 4 ¶ 2, so he posed an immediate threat to the officers' safety. *See Stanton v. Elliott*, 25 F.4th 227, 234-35 (4th Cir. 2022) ("[A]n officer need not see the weapon in a suspect's hands to find him objectively dangerous."); *see also Nicholson v. Balt. Police Dep't*, No. 20-3146, 2023 WL 4549741 at *7 (D. Md. July 14, 2023) ("Generally, the Fourth Circuit has recognized that it is reasonable for police officers to draw their weapons on a person when they have reason to believe that the person is armed or otherwise dangerous, that the person is engaged in criminal activity, or that some other threat to the officers' safety is present due to the nature of the interaction.") (collecting

cases). Although Mr. Murdock was not resisting arrest, Dkt. 4 ¶ 2, the officers used reasonable force. Mr. Murdock does not allege he was aggressively handled beyond being held at gunpoint and handcuffed. The officers' actions were reasonable toward an ostensibly armed man accused of armed assault.

The amended complaint ultimately alleges a routine arrest, not one that raises a claim for excessive force. The Court therefore dismisses Mr. Murdock's excessive force claim against Officers Proffitt and Serrano Valentin.

### G. Count VII does not plausibly allege *Monell* liability against the City of Greensboro or Guilford County.

The amended complaint fails to plead a *Monell* claim both because it fails to plead a constitutional injury and because its conclusory allegations that the City of Greensboro and Guilford County maintain unconstitutional policies, practices, or customs fails to meet the plausibility pleading standard of Federal Rule of Civil Procedure 8(a)(2). The Supreme Court held in *Monell v. Department of Social Services* that municipalities can be liable under Section 1983. 436 U.S. 658, 690 (1978). But municipalities can be sued under Section 1983 "only when 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Williams v. City of Charlotte*, No. 23-1665, 2025 WL 841836, at *3 (4th Cir. Mar. 18, 2025) (quoting *Monell*, 436 U.S. at 690); *see also Cooper v. City of Wheeling*, 169 F.4th 220, 227 (4th Cir. 2026). Thus, a *Monell* claim requires alleging

that: (1) plaintiff suffered a constitutional harm stemming from a municipal employee's acts in furtherance of a municipal policy or custom;[23] (2) the "policy's creation is fairly attributable to the municipality"; and (3) the policy or custom affirmatively caused the plaintiff's constitutional injury. *See Nelson v. Town of Moncks Corner*, No. 2:25-cv-12755, 2026 WL 871231, at *3 (D.S.C. Mar. 10, 2026), *adopted,* 2026 WL 870498 (D.S.C. Mar. 30, 2026) (citing Fourth Circuit authority for each prong). In addition, "[a] municipality's 'decision not to train certain employees about their legal duty to avoid violating citizens' rights may [constitute] . . . an official government policy for purposes of § 1983' when [such failure] . . . amounts to 'deliberate indifference' to the rights of the person affected by the untrained employee." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). One way to establish a custom or practice is to "allege numerous particular instances of unconstitutional conduct." *See Weeden v. Prince George's County*, No. 17-2013, 2018 WL 2694441, at *4 (D. Md. June 4, 2018).

Historically, plaintiffs could sustain *Monell* claims with sparse allegations of unconstitutional policies under a "notice pleading" standard. *See Leatherman v. Tarrant*

---

[23] "A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks omitted).

*Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-14 (2002) (rejecting heightened pleading requirements in civil rights cases); *Jordan v. Jackson*, 15 F.3d 333, 339 (4th Cir. 1994) (embracing *Leatherman*). But *Twombly* and *Iqbal*'s "plausibility pleading" standard now requires "more than labels and conclusions . . . . [A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation modified); *accord Iqbal*, 556 U.S. at 678; *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009); *see also Cook v. Howard*, 484 F. App'x 805, 808-11 (4th Cir. 2012) (holding that *Twombly* and *Iqbal*—not *Leatherman* or *Jordan*—set the pleading standard for *Monell* claims via Rule 8(a)(2)).

But before even getting to plausibility pleading, Mr. Murdock's *Monell* claim fails because he fails to plead an essential element: a constitutional injury stemming from an official policy, custom, or practice. *See Carr*, 172 F.4th at 356 ("[Plaintiff] has failed to establish any constitutional violation. And in the absence of a constitutional violation, [plaintiff's] attempt to hold the City and the School Board liable under *Monell* is a nonstarter."); *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999) ("As there are no underlying constitutional violations by any individual, there can be no municipal liability."), *abrogated on other grounds*, *Short v. Hartman*, 87 F.4th 593, 609-10 (4th Cir. 2023). For the reasons discussed throughout this Opinion, Mr. Murdock's various Fourth and Fourteenth Amendment claims all fail. So, there is no constitutional injury to attribute to an official policy, practice, or custom, and his *Monell* claim fails.

Nor does Mr. Murdock even plausibly plead the existence of an official policy, practice, or custom. Count VII merely "recite[s] the elements of" a *Monell* claim, *Twombly*, 550 U.S. at 555, in several places. For example, he alleges:

> Former Police Chief Brian James gave training, policy, practices, customs and deliberate indifference to the Greensboro Police Department . . . by not disciplining officers and or taking inaction when complaints was made during the plaintiff's prolonged proceedings when affidavits from the alleged victims stating that the plaintiff was innocent.

Dkt. 4 at 33. Or:

> **Probable Cause Policy**: The Greensboro Police Department would has a policy outlining the legal standard for probable cause, which officers must follow before making an arrest, with or without a warrant. The plaintiff affirms and or asserts that a widespread practice of deviating from this standard, or a flawed policy for assessing it, led to the unlawful arrest, thou could not be more true.

Dkt. 4 at 34. *See also, e.g.*, Dkt. 4 at 33-36 (similarly asserting GPD maintains unconstitutional policies related to arrests, prosecutions, investigations, charging decisions, supervision, and internal affairs). These allegations all fail because they merely assert the existence of a policy, practice, or custom without further details. *See Schoberg v. Balt. County*, No. 23-2852, 2024 WL 1742927, at *10 (D. Md. Apr. 23, 2024), *appeal dismissed sub nom. Schoberg v. Schwartzman*, No. 25-1310, 2025 WL 2718541 (4th Cir. July 22, 2025); *see also Washington v. Hous. Auth. of Columbia*, 58 F.4th 170, 182 (4th Cir. 2023) ("Establishing causation [for a *Monell* claim] requires a plaintiff to first identify a specific deficiency in a policy.").

Nor do Mr. Murdock's past run-ins with Defendants establish the existence of an official policy, practice, or custom. Mr. Murdock describes several prior instances in 2005, 2006, 2012, 2015, and 2018—when he was arrested and prosecuted—to allege that the City and County have a policy, practice, or custom that caused him to be falsely arrested, imprisoned, and prosecuted.[24] *See* Dkt. 4 at 37, 43, 46-47. But like his 2020 and 2025 incidents, those arrests and prosecutions were seemingly supported by probable cause, so they cannot serve as examples of "numerous particular instances of unconstitutional conduct," *Weeden*, No. 17-2013, 2018 WL 2694441, at *4, to establish *Monell* liability. The 2005 arrest for armed robbery was supported by victim statements from Mr. Murdock's girlfriend and her sister. *See* Dkt. 4 at 42-43. The 2006 arrest was based on a victim report. *See id.* at 43. The 2012 arrest arose from Mr. Murdock driving with a concealed firearm, which it appears he was not allowed to possess based on his 2006 plea agreement.[25] *See* Dkt. 4 at 43-44. The 2015 arrest arose from a woman accusing Mr. Murdock of armed

---

[24] Mr. Murdock makes these claims in a wide variety of ways. He alleges that GPD has a pattern of "overcharging," "initiating trumped up charges," and "allow[ing] false statements," and that the Guilford County Magistrates Office "issues warrants . . . [without legal probable cause]." *See* Dkt. 4 at 38-39. He further alleges that Guilford County and its District Attorney's Office "extend[s] the false imprisonment of individuals . . . for multiple years unlawfully." *See id*. at 39-40.

[25] Even if the 2012 arrest lacked probable cause, "[s]poradic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 403 (4th Cir. 2014) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987)).

robbery. *See id.* at 46. The 2018 arrest arose from a woman accusing Mr. Murdock of assault. *See id.* at 47. Because Defendants appear to have followed the law on each of these occasions, Mr. Murdock has failed to "allege [the] numerous particular instances of unconstitutional conduct" that may be used to show the existence of a policy, practice, or custom under *Monell*. *Weeden*, 2018 WL 2694441, at *4.

Because Mr. Murdock failed to plead a constitutional injury caused by an official policy, practice, or custom attributable to Defendants, his *Monell* claim is dismissed.

**H. Count VIII does not plausibly allege a conspiracy to violate Due Process.**

Mr. Murdock fails to plead a Fourth or Fourteenth Amendment claim in Count VIII for "[c]onspiracy to violations of due process of law." Dkt. 4 at 57. To plead a Section 1983 conspiracy, Mr. Murdock must allege that Defendants: (1) acted in concert and (2) completed some overt act in furtherance of the conspiracy that (3) resulted in the deprivation of one of his constitutional rights. *Carr*, 172 F.4th at 355.

Mr. Murdock fails to allege Defendants deprived him of a constitutional right. He claims his due process rights were violated when Officers Proffitt and Serrano Valentin failed to amend their police report about the 2025 incident after Mr. Murdock submitted a video he claims proved his innocence. *See* Dkt. 4 at 58. But this allegation does not constitute a due process violation. That is because "there is no constitutional right to an accurate police report." *Childress v. City of Charleston Police Dep't*, No. 2:13-cv-1225, 2015 WL 5231625, at *6 (D.S.C. Sept. 8, 2015), *aff'd in part, vacated in part, remanded*, 657 F. App'x

160 (4th Cir. 2016) (citing *Jarrett v. Twp. of Bensalem*, 312 F. App'x 505, 507 (3d Cir. 2009) ("[T]he mere existence of an allegedly incorrect police report fails to implicate constitutional rights."); *Smith v. Patri,* 99 F. App'x 497, 498 (5th Cir. 2004) ("[T]here is no right to a completely accurate police report."); *Landrigan v. City of Warwick*, 628 F.2d 736, 745 (1st Cir. 1980) ("[T]he mere filing of the false police reports, by themselves and without more, did not create a right of action in damages under 42 U.S.C. § 1983."). Indeed, "there is in fact no constitutional right to a police report" at all. *Childress*, 2015 WL 5231625, at *6 (collecting cases).

Because Mr. Murdock failed to identify a constitutional right Defendants violated by not amending the police report, Count VIII is dismissed.

**I. Counts IX and V are duplicative.**

The claims and Defendants listed in Count IX are identical to those in Count V. *Compare* Dkt. 4 at 58-59 (alleging "violations of: Due Process, Conspiracy of Malicious Prosecution" related to 2020 arrest and prosecution against City, County, GPD, GCSO, GCDC, and Officer Poole), *with* Dkt. 4. at 26-27 (alleging same claims related to 2020 incident against same Defendants). The Court dismisses Count IX as duplicative. *Pizarro Orta*, 2024 WL 3555093, at *4.

## CONCLUSION

For the foregoing reasons, the County Defendants' Motion to Dismiss (Dkt. 40) is GRANTED. All counts against the County Defendants are DISMISSED WITH PREJUDICE.

The City Defendants' Motion to Dismiss (Dkt. 33) is GRANTED. Counts I, III, IV, V, VI, VII, VIII, and IX against the City Defendants are DISMISSED WITH PREJUDICE. Count II is DISMISSED WITH PREJUDICE with respect to the Fourth Amendment malicious prosecution claim; however, Count II is DISMISSED WITHOUT PREJUDICE with respect to the Fourteenth Amendment fabrication-of-evidence claim against Officer Poole in his individual capacity.

The Court will refrain from immediately entering judgment in this case to allow Plaintiff an opportunity to file a motion for leave to amend, if he so chooses. Plaintiff has 30 days from the date of this Order to move for leave to amend. The motion must contain an argument for why amendment would be appropriate under Federal Rule of Civil Procedure 15. *See* Loc. Civ. R. 7.3. And Plaintiff must attach a proposed second amended complaint to the motion. *See* Loc. Civ. R. 15.1.[26] The proposed second amended complaint must be limited to the fabrication-of-evidence claim in Count II, and it must address the deficiencies highlighted in this Order. Should Plaintiff move for leave to

---

[26] The Local Civil Rules for this District are available at https://www.ncmd.uscourts.gov/local-rules-and-orders.

amend, Defendants will have the opportunity to respond in the normal course. *See* Fed. R. Civ. P. 15(a)(3). Should Plaintiff not move for leave to amend within 30 days of the date of this Order, the Court will enter judgment in this case.

It is SO ORDERED.

This the 30th day of September, 2026.

LINDSEY A. FREEMAN
UNITED STATES DISTRICT JUDGE